UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-139-FDW

| | |
|---|---|
| DARRIUS JHAMAAR BENTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU HASSAN, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 4). Petitioner has moved to proceed *in forma pauperis*. (Doc. No. 2).

I. **BACKGROUND**

*Pro se* incarcerated Plaintiff has filed a civil rights suit pursuant to 42 U.S.C. § 1983 with regards to incidents that allegedly occurred at the Lanesboro and Scotland Correctional Institutions. Plaintiff names as Defendants former Lanesboro C.I. physicians Dr. Hassan and Dr. Haynes, and "Scotlands Medical Staff (doctors) Jane Doe 1-3 John Doe 1-3" (Doc. No. 1 at 1); see (Doc. No. 1 at 3).

Construing the Complaint liberally and accepting the allegations as true, Plaintiff woke up to a throbbing earache at Lanesboro C.I. in 2009. He declared a medical emergency to Sergeant Ingram who notified "medical" of this matter. (Doc. No. 1 at 3). Medical staff determined that Plaintiff did not meet the criteria for a medical emergency and was told by Sergeant Ingram that his request was denied and he would have to fill out a sick call form. Plaintiff was in excruciating pain and filled out a sick call form. Plaintiff saw Unit Manager Steele on the way to dinner that

1

same day. Steele stopped Plaintiff because he was wobbling down the hallway due to loss of equilibrium. Plaintiff told Steele about his painful ear and she noticed that the side of Plaintiff's face was swollen. Steele directed Plaintiff to go to the dining hall while she called medical to see if they would see him. Steele was successful in getting medical to see Plaintiff. He was seen by a nurse who gave him over the counter ibuprofen and put him on the list for the physician. He was in excruciating pain with the ibuprofen while he waited three or four days until he was seen by Dr. Hassan who diagnosed Plaintiff with an ear infection and prescribed antibiotics and ear wax removal. About 10 days after taking the medicine Plaintiff woke up with excruciating pain in both ears. There was no follow-up check after 14 days to see if the symptoms had resolved.

Plaintiff filled out another sick call form explaining that the condition had spread to both ears. A few days later, Dr. Hassan saw Plaintiff and he was charged a second $5 co-pay. Dr. Hassan diagnosed an ear infection in both ears and re-ordered the antibiotics and wax removal drops. Plaintiff again filled out a sick call form after using the medication and was charged another $5 co-pay. Dr. Hassan and Dr. Haynes both saw him and said they did not know what was causing his problems. Both doctors asked him during different visits whether he was sticking anything in his ears. Plaintiff explained that he had only cleaned them with a washcloth and used earbuds. Dr. Haynes said he was going to recommend that Plaintiff seen an E.N.T. specialist but an appointment with a specialist never happened. He was only given antibiotics, ear drops and ibuprofen between 2009 and 2016. During that time, Plaintiff's medical needs have not been adequately addressed but have worsened. Plaintiff went on two hunger strikes at Lanesboro C.I. to be seen by "medical personnel" about his ears and pain. (Doc. No. 1 at 12).

Plaintiff was transferred from Lanesboro C.I. to Scotland C.I. as a result of filing the

Complaint.[1] He was seen by "the Medical Staff" upon arriving at Scotland C.I. on June 28, 2016. He explained to Medical Staff that he is still experiencing major discomfort, swelling, discharge, and decreased hearing because he was never seen by an E.N.T. Medical Staff had him fill out a sick call to have his issues addressed at another time. When he was seen by Scotland C.I.'s Medical Personnel, they did the same as Lanesboro C.I. by ordering the same medication and assured him that he would be seen by an outside specialist. Since then he has seen Medical Staff at Scotland C.I. over 10 times. He has waited patiently and has received promises that his case would be reviewed by the "UR Board" to determine whether he needs outside care. However, he has not received it even though he has been complaining about the same condition for seven years.

Plaintiff suffers from excruciating pain in his ears and eyes, discharge from his ears, pressure in his head, equilibrium problems, major headaches, drainage in his throat, poor sleep, sensitivity to light and loud noises, decreased hearing, and emotional distress.

Plaintiff seeks declaratory judgment, compensatory damages, punitive damages, a jury trial, costs, and additional relief that the Court deems just, proper, and equitable.

    II.    **MOTION TO PROCEED** *IN FORMA PAUPERIS*

The Court first address Plaintiff's motion to proceed *in forma pauperis*. Plaintiff's affidavit shows that he has no monthly income, no assets, and no expenses. He does not expect any major changes to his monthly income, expenses, or assets in the next 12 months. He explains his inability to pay the costs of these proceedings as follows: "I have been incarcerated since 12/06." (Doc. No. 2 at 5). His Prisoner Trust Fund Account Statements reveals that he has a zero balance. (Doc. No. 9 at 4). The Court is satisfied that Plaintiff does not have sufficient funds to pay the filing fee. The

---

[1] Plaintiff fails to explain how the Complaint could have caused the transfer to Scotland C.I. which predated it.

Court will, therefore, grant the motion and permit Plaintiff to proceed *in forma pauperis*.

## III. INITIAL REVIEW STANDARD

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal

4

civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

## IV. DISCUSSION

**(1) Parties**

**(a) Individuals Not Named as Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

**(b) Medical Personnel**

Plaintiff names as Defendant "Scotlands Medical Staff (doctors) Jane Doe 1-3 John Doe 1-3" and "Medical Personnel[] at Scotland Correctional Institution." (Doc. No. 1 at 3).

To the extent that Plaintiff attempts to name the Medical Department as a Defendant, that

5

claim fails because that entity is not a "person" for purposes of § 1983. See generally Will v. Michigan Dep't of State Police, 491 U.S. 58, 70–71 (1989). Therefore, the claim against "Medical Personnel[] at Scotland C.I." will be dismissed without prejudice.

To the extent that Plaintiff attempted to name John and Jane Doe doctors as Defendants, he has failed to adequately identify the individuals against whom he intends to proceed. John Doe suits are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000). "[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." Schiff, 691 F.2d at 197-98 (because it appeared that John Doe was an actual person, it was error for the district court to conclude that, under appropriate circumstances, this type of case would not be permitted).

Plaintiff's claims against the Scotland C.I. Medical Department and John and Jane Does are insufficient to proceed at this time. These claims will therefore be dismissed without prejudice.

**(2)** **Deliberate Indifference**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501

U.S. 294, 298 (1991); see also Hudson v. McMillian, 503 U.S. 1, 5 (1992), and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is subjective and requires that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial *risk* of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Plaintiff alleges that Dr. Hassan diagnosed him with an ear infection and prescribed ear

drops and antibiotics. When the pain spread to both ears, Plaintiff submitted another sick call and Dr. Hassan saw him for a second time. He diagnosed an ear infection in both ears and again prescribed ear drops and antibiotics. Dr. Hassan and Dr. Haynes both saw him and said that they did not know what was causing his problems and asked whether he was putting anything in his ears. Dr. Haynes said he was going to recommend that Plaintiff see an E.N.T. but that never happened.

Assuming that a painful ear infection is a serious medical need, Plaintiff has failed to demonstrate that either Dr. Hassan or Dr. Haynes was deliberately indifferent. Hassan saw him twice and Haynes saw him once. Hassan provided care by prescribing antibiotics and ear drops. Haynes provided care by recommending that Plaintiff see an E.N.T. Plaintiff claims that Hassan and Haynes failed to diagnose and correctly treat his ear condition fails to state a deliberate indifference claim. With regards to Scotland C.I., Plaintiff fails to allege that any individual knew of, and was deliberately indifferent to, a serious medical need. He fails to identify any of the practitioners in the Scotland C.I. medical department who saw him during his 10 contacts with the department, and he admits that he was prescribed treatment and was told he would be recommended to see an outside specialist and that his case would go before the UR Board.

Plaintiff's allegations demonstrate that Hassan, Haynes, and the Scotland C.I. medical personnel provided Plaintiff with care and recommended outside medical care. Plaintiff has failed to allege how the prescribed treatment's ineffectiveness or failure to a specialist appointment to materialize was deliberately indifferent on the part of any Defendant or was due to anything other than negligence.

## V.  CONCLUSION

For the reasons stated herein, the Complaint is dismissed for failure to state a claim

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, (Doc. No. 2), is **GRANTED.**

2. This action is dismissed for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(ii).

3. The Clerk is instructed to terminate this action.

Signed: September 5, 2018

Frank D. Whitney
Chief United States District Judge